Duncan S. McNab, J.
The defendant has been charged with the crimes of criminal sale of a controlled substance in the third degree (3 counts), criminal possession of a controlled substance in the third degree (3 counts), and criminal possession of a controlled substance in the seventh degree (4 counts). He has moved through his attorney by writ of habeas corpus to dismiss the indictment on the grounds that the grand jury which handed up his indictment was not selected in accordance with the requirements of section 609 of the Judiciary Law.
The relevant portion of that section states:
"Grand jurors in the counties within the city of New York.
"1. Selection of grand jurors. The annual list of persons to serve as grand jurors at the terms of the supreme court for the trial of criminal actions within the city of New York, for each year beginning January first and expiring December thirty-first following, shall be made up in the following manner: the county clerk of each county shall make special investigation of persons qualified to serve as trial jurors. The county clerk shall require each applicant for service as a grand juror to record the fingerprints of his two hands in such manner as to contain legibly the points (including the deltas *408 and cores) necessary to afford accurate and complete classification by the state department of correction.”
It is upon the use of the word "applicant” that the defendant relies in urging that the procedural requirements of the section have not been satisfied. It is argued that the use of the term "applicant” makes it incumbent upon the county clerk to inform members of the petit jury that any number of them so wishing to serve on the grand jury are free to make such application and, further, that this has not been done. Annexed to the writ is a transcript of part of the testimony of Anthony Durso, the county clerk, taken before Judge Morton in the case of People v Walker (Indictment No. 1703/74), on February 5, 1975, at which time he stated that he selects potential grand jurors from the petit jury lists and that he makes no statement to the panel of petit jurors of the type urged by defendant.
Resolution of this issue rests solely upon the meaning of the word "applicant” as it is used in section 609 of the Judiciary Law. A review of the legislative history of section 609 and related sections reveals that the word in question is not used in the sense urged by the defendant and works no procedural changes in the manner of selecting potential grand jurors from the petit jury list..
The predecessor to section 609 of the Judiciary Law was section 267-aa of the Code of Criminal Procedure. That section was preceded by a former section 267-aa which in turn derived from section 1637 of chapter 410 of the Laws of 1882.
Section 1637 and the following section 1638 provided that:
"§ 1637. The commissioner of jurors shall be the judge of the qualifications of grand jurors. He shall hear and determine all claims for exemption, and shall keep a record of all exempts, and of the period of time for which said exemptions are allowed.
"§ 1638. The persons to serve as grand jurors at courts of oyer and terminer and general sessions, to be held in the city of New York, shall be selected from the persons whose names are contained in the lists of petit jurors for the time being for said city, by a board to consist of the mayor of such city, the presiding judge of the supreme court in the first judicial district, the chief justice of the superior court of the city of New York, the first judge of the court of common pleas, the recorder, and the city judge of said city and county.”
*409 These sections, which provided in substance that grand jurors would be selected from the list of petit jurors by a jury board, remained substantially unchanged until 1938.
In 1938 the Legislature repealed section 1637 (see L 1938, ch 552, §§ 27, 28) and replaced it with section 267-aa, section 267-bb, and section 267-cc of the Code of Criminal Procedure (see L 1938, ch 552, § 19). These sections provided for the drawing of grand jurors in the counties of New York, Bronx and Kings, respectively. While these sections were subsequently modified to create a single system for all of New York City, the language used in the 1938 law is important for it reflects the procedure used at that time for selecting grand jurors. The relevant portion of section 267-cc provides:
"§ 267-cc. Drawing of grand jurors in Kings county. 1. Board for selection of grand jurors; constitution. The commissioner of jurors of the county of Kings shall * * * submit the list of all persons duly qualified to act as jurors and not exempt by law, to a board consisting of the justices of the supreme court of the second judicial district, residents of Kings county, and the judges of the county court of such county.
* * *
"4. Selection of grand jurors; qualifications. Such board shall select from the list produced by the commissioner of jurors a list of names of * * * persons to serve as grand jurors for such county.”
This law remained substantially unchanged until 1940 when the Legislature repealed old section 267-aa (see L 1940, ch 202, § 25) and replaced it with a new section 267-aa to unify the procedure of selecting grand jurors in all the counties of New York (see L 1940, ch 202, § 25). That section provided in part that: "§ 267-aa. Grand jurors in the counties within the city of New York. 1. Selection of grand jurors. The annual list of persons to serve as grand jurors at the terms of the supreme court for the trial of criminal actions and at the terms of the court of general sessions of the county of New York and the county courts within the city of New York shall be made up in the following manner: the county clerk of each county shall make special investigation of persons qualified to serve as trial jurors. He shall make a list of those persons who, this investigation shows, are suitable to serve as grand jurors. The list shall contain the names of at least the maximum number of persons permitted for the annual grand jury list. The annual *410 grand jury list shall be selected therefrom by the respective county jury boards.”
The significant change in this law from its predecessors was the vesting of the power in the county clerk to make preliminary investigation of petit jurors to facilitate the final selection of grand jurors by the county jury boards. The Sixth Annual Report of the Judicial Council, 1940 (now known as the Judicial Conference) recommended the changes. They commented that (p 242):
"Allowing the county clerk to make the preliminary investigation renders it physically easier for the board to perform its tasks of final selection. We are informed that in the county of Kings the judges of the board for the selection of grand jurors personally examined 56,000 questionnaires. It seems obvious that besides being a great burden to the judges, this manner of selecting grand jurors does not make possible as careful a selection as would be desirable.
"The details of preparation and the nature of the investigation which the county clerk should make cannot properly be set forth in every particular but the responsibility for careful and thorough investigation must be placed on the county clerk.”
Also in 1940, the Legislature, added present section 596 to the Judiciary Law (see L 1940, ch 202, § 1). This section set forth the qualifications for jurors. While not a new concept, an important subsection was added at the suggestion of the Judicial Council. That section, presently designated subdivision 4 of section 596, provided then, as it does now, that:
"§ 596. Qualifications of jurors. In order to be qualified to serve as a juror in the counties included within a city having a population of one million or more, a person must: * * *
"5. Not have been convicted of a felony or of a misdemeanor involving moral turpitude.”
The Judicial Council recommended that this subdivision be added in order to require that all jurors be of uniformly high caliber (Sixth Annual Report of N.Y. Judicial Council, 1940, pp 205, 206). The council also noted that the qualifications for trial and grand jurors were the same since grand jurors were selected from the list of trial jurors (p 243).
In 1941, section 267-aa was again amended (see L 1941, ch 722, § 2). Subdivision 1 was greatly expanded to include the *411 fingerprint requirement now found in section 609 of the Judiciary Law.
The pertinent part of the 1941 version reads as follows:
"1. Selection of grand jurors. The annual list of persons to serve as grand jurors at the terms of the supreme court for the trial of criminal actions and at the terms of the court of general sessions of the county of New York and the county courts within the city of New York shall be made up in the following manner: the county clerk of each county shall make special investigation of persons qualified to serve as trial jurors. The county clerk shall require such person qualified for service as a grand juror to record the fingerprints of his two hands in such manner as to contain legibly the points (including the deltas and cores) necessary to afford accurate and complete classification by the state department of correction * * * The county clerk shall not place the name of any applicant for grand jury service upon the grand jury list unless such commissioner shall have certified that such bureau has no criminal record of such person * * *
"The county clerk shall make a list of those persons who, this investigation shows, are suitable to serve as grand jurors * * * The annual grand jury list shall be selected therefrom by the respective county jury boards.”
Of particular interest to the issue at hand is the use of the words "person qualified”, as used in the second sentence, and "applicant” in the 1941 statute. A "person qualified” to serve as a grand juror would be one who had passed the requirements of section 596 of the Judiciary Law; that is, one who had not been convicted of a felony or misdemeanor involving moral turpitude. It is a misnomer to label such person as "qualified” if the fingerprint investigation has not yet been completed. This contradiction becomes apparent later in the statute when persons under investigation are referred to as "applicant^].” Clearly, the intention of the statute is to view prospective grand jurors as applicants. To regard them as "qualified” before investigation defeats the purpose of the amendment to the statute.
In 1942, the contradiction was corrected by amending subdivision 1 of Section 267-aa to read as follows (L 1942, ch 799, §17):
"1. Selection of grand jurors. The annual list of persons to serve as grand jurors at the terms of the supreme court for the trial of criminal actions and at the terms of the court of *412 general sessions of the county of New York and the county courts within the city of New York * * * shall be made up in the following manner: the county clerk of each county shall make special investigation of persons qualified to serve as trial jurors. The county clerk shall require each applicant for service as a grand juror to record the fingerprints of his two hands in such manner as to contain legibly the points (including the deltas and cores) necessary to afford accurate and complete classification by the state department of correction * * * If the commissioner of correction shall report to the county clerk the previous criminal record of an applicant for grand jury service, the county clerk shall not place the name of such person upon the grand jury list if such record contains a conviction for a felony or a misdemeanor involving moral turpitude.
* * *
"The county clerk shall make a list of those persons who, this investigation shows, are suitable to serve as grand jurors * * * The annual grand jury list shall be selected therefrom by the respective county jury boards.”
The change from "person qualified” to "applicant” in the second sentence of the section was clearly in order. By so doing, the Legislature conformed the section to comply with its original intent; that is, that persons not investigated or under investigation were not yet qualified to serve as grand jurors. They were merely applicants. The initial selection process of potential grand jurors was still left to the county clerk and final determination to the county boards.
This change also conforms the section to the then existing requirements of section 596 of the Judiciary Law. As was noted earlier, a "qualified person” would be one without a felony or misdemeanor conviction involving moral turpitude. The use of the word "applicant” aptly describes a potential general juror under investigation, one not yet qualified.
In 1954, the Legislature repealed section 267-aa (see L 1954, ch 305, § 15) and replaced it with section 609 of the Judiciary Law (L 1954, ch 305, § 16). The transfer from the Code of Criminal Procedure to the Judiciary Law was made without alteration of the items under consideration. The present law still uses the term "applicant,” the county clerk is still empowered to make the initial selection and investigation of potential grand jurors, and the county board performs the final selection process.
*413 The legislative history of section 609 makes the following two points patently clear. First, since 1882, some duly designated body or person has selected grand jurors from the petit jury lists. Whether it be a commissioner of jurors, a county board or a county clerk, a selection process has always been authorized. Taking the most favorable view of the defendant’s argument, the insertion of the word "applicant” without more is insufficient to alter a procedure that has been in effect for over 90 years. If such was the intent of the Legislature, provisions for implementing the procedure urged by the defendant would have been enacted. Rules for the county clerk and methods, means and forms would have been promulgated. This is not to say that an otherwise qualified juror may not volunteer for grand jury duty or that one so qualified may not decline from that duty before he is finally selected. Rather, the foregoing makes it clear that the county clerk is under no affirmative duty to inform the members of the petit jury that they may volunteer for service on the grand jury.
Secondly, the use of the word "applicant” in section 609 of the Judiciary Law was never intended to work a procedural change in the method of . selecting grand jurors. Rather, it was used to cure an infirmity in a preceding statute and not to impress a new duty upon the county clerk. A reading of the history of the statute makes it clear that an applicant refers to a potential grand juror, one still under special investigation. While a more appropriate term might have been chosen to describe this class of jurors, the use of an inartful word cannot be the basis for overthrowing the clear intent of the statute. That this county or other counties may have or will in the future inform petit jurors or the community at large that they may apply for service on the grand jury is of no moment, for a practice, no matter how common, does not amount to legislative amendment.
In United States ex rel. Chestnut v Criminal Court of City of N Y. (442 F2d 611), relied heavily upon by the defendant, the court goes into great detail in explaining the selection process of grand jurors in New York County. The court notes that all persons seeking to qualify as grand jurors are viewed as prospective jurors. "The Deputy County Clerk * * * conducts a personal interview with prospective grand jurors. At that time he reviews the completed questionnaire with them. The Deputy Clerk may thereafter remove the names of the prospective jurors who, based upon the questionnaire and *414 interview, he concludes are disqualified or have a valid exemption from service * * * The names of jurors not removed are then forwarded to the local police and their fingerprints sent to the Bureau of Criminal Identification in Albany, for prior criminal record search * * * The list of potential grand jurors remaining after the interview and investigation process is then forwarded to the County Jury Board”. (Ibid, p 614, n 2.) Judge Kaufman, writing for the court in Chestnut considered all jurors seeking to serve on the grand jury but not having undergone investigation merely as potential grand jurors. This view is in full accord with the position taken heretofore.
Based upon all the foregoing, the defendant’s motion to dismiss the indictment is denied.